IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOEL DONALD CARL,

               Petitioner,

    v.

SUPERINTENDENT, SCI COAL, et al.,

               Respondents.

CIVIL ACTION
NO. 11-5176

## <u>OPINION</u>

Slomsky, J.                                                      November 25, 2015

## I.    INTRODUCTION

Before the Court are the counseled Objections of Joel Donald Carl ("Petitioner") to two Reports and Recommendations by Magistrate Judge Timothy R. Rice.  The first Report and Recommendation, dated June 13, 2014, recommends that the Petition for Writ of Habeas Corpus be dismissed with prejudice as untimely.  (Doc. No. 23.)  The second Report and Recommendation, dated January 15, 2015, recommends that Petitioner's Motion for Remand (Doc. No. 25) and Motion to Stay and Abey (Doc. No. 31) both be denied with prejudice.  (Doc. No. 35.)  Petitioner has submitted Objections to both Reports and Recommendations.  (Doc. Nos. 24, 36.)  Because the Objections overlap, the Court will address all of Petitioner's Objections in this Opinion.[1]

Petitioner seeks relief based on alleged violations of his Sixth Amendment right to effective assistance of counsel and his Fourteenth Amendment right to due process of law.  (Doc. No. 1 ¶¶ 1-2.)  However, Petitioner filed his Petition eleven months after the one-year statute of

---

[1] The Court addresses Petitioner's Objections to each Report and Recommendation separately below.

limitations to file a federal habeas petition had expired.  Petitioner claims that statutory tolling, equitable tolling, and actual innocence remedy his untimely filing.  (Doc. No. 1.)

Following a review of filings by the parties and the pertinent state court record, Magistrate Judge Rice issued a Report and Recommendation on June 13, 2014.  (Doc. No. 23.) Due to Petitioner's untimely filing, he recommended the Petition for Writ of Habeas Corpus be denied with prejudice.   (Doc. No. 23.)   Petitioner filed Objections to the Report and Recommendation on June 25, 2014.  (Doc. No. 24.)

On September 2, 2014, Petitioner filed a Motion to Remand this case to the Magistrate Judge to consider additional affidavits of his parents.  (Doc. No. 25.)  On October 24, 2014, Petitioner filed a Motion to Stay and Abey the Habeas Petition pending disposition of a newly filed PCRA claim in state court.  (Doc. No. 31.)  Finding that Petitioner has not acted with due diligence, and that the information included in his new PCRA petition does not present clear and convincing evidence to overcome the state court findings, Magistrate Judge Rice recommended denying both Motions.   Petitioner filed Objections to the January 15, 2015 Report and Recommendation on January 23, 2015.  (Doc. No. 36.)

For reasons that follow, this Court will approve and adopt Magistrate Judge Rice's June 13, 2014 Report and Recommendation (Doc. No. 23), and deny the Petition for Writ of Habeas Corpus (Doc. No. 1).  This Court also will approve and adopt Magistrate Judge Rice's January 15, 2015 Report and Recommendation (Doc. No. 35), and deny the Petitioner's two Motions (Doc. Nos. 25, 31).

## II.   BACKGROUND[2]

On February 4, 2004, a jury found Petitioner guilty on Count 1: Murder of the First Degree[3] and on Count 2: Possessing an Instrument of Crime[4] in the Lehigh County Court of Common Pleas for the murder of his wife.[5]   On March 15, 2004, Petitioner was sentenced to life in prison without parole.   (Doc. No. 1 at 21.)   Petitioner appealed his conviction to the Pennsylvania Superior Court, challenging the admission of his confession as involuntary and alleging prosecutorial misconduct during the Commonwealth's closing argument.   (Id.)   On November 16, 2005, the Pennsylvania Superior Court affirmed his conviction and sentence.   (Id.)   On June 12, 2006, the Pennsylvania Supreme Court denied allowance of an appeal.   (Id.)   On

---

[2]  For purposes of this Opinion, the Court has considered the Petition for Writ of Habeas Corpus (Doc. No. 1), the Commonwealth's Response to the Petition (Doc. No. 19), Petitioner's Response to the Commonwealth's opposition to the Petition (Doc. No. 22), United States Magistrate Judge Timothy R. Rice's June 13, 2014 Report and Recommendation (Doc. No. 23), Petitioner's Objections to the June 13, 2014 Report and Recommendation (Doc. No. 24), and the pertinent state court record.   Additionally, the Court has considered Petitioner's Motion for Remand (Doc. No. 25), the Commonwealth's Response to the Motion to Remand (Doc. No. 29), Petitioner's Response to the Commonwealth's Opposition to the Motion to Remand (Doc. No. 30), Petitioner's Motion to Stay and Abey (Doc. No. 31), the Commonwealth's Response to the Motion to Stay and Abey (Doc. No. 32), Petitioner's Reply to the Commonwealth's Opposition to the Motion to Stay and Abey (Doc. No. 33), Magistrate Judge Timothy R. Rice's January 15, 2015 Report and Recommendation (Doc. No. 35), and Petitioner's Objections to the January 15, 2015 Report and Recommendation (Doc. No. 36).

[3]  Under 18 Pa. Cons. Stat. § 2502(a), "[a] criminal homicide constitutes murder of the first degree when it is committed by an intentional killing."   Under 18 Pa. Cons. Stat. § 2501(a), "[a] person is guilty of criminal homicide if he intentionally, knowingly, recklessly or negligently causes the death of another human being."

[4]  Under 18 Pa. Cons. Stat. § 907(a), "[a] person commits a misdemeanor of the first degree if he possesses any instrument of crime with intent to employ it criminally."

[5]  The state Criminal Docket in the Court of Common Pleas of Lehigh County, Pennsylvania, has the Docket Number CP-39-CR-0004381-2002.

September 11, 2006, ninety days later, the judgment became final and the one-year statute of limitations in which to file a federal habeas petition started to run.[6]

On June 7, 2007, Petitioner filed a timely petition for post-conviction relief under the Pennsylvania Post Conviction Relief Act ("PCRA") in the Lehigh County Court of Common Pleas.  (Id. at 22.)  The petition was filed 269 days into the one-year limitation period for filing federal petitions for writs of habeas corpus, and tolled the limitation period. See 28 U.S.C. § 2244(d)(1)-(2).[7]  On May 15, 2008, after an evidentiary hearing, the Court of Common Pleas denied the PCRA petition.  (Doc. No. 1 at 22.)  Petitioner appealed this decision to the Superior Court of Pennsylvania.  (Id.)  On February 19, 2009, the Pennsylvania Superior Court affirmed the order denying his petition for relief pursuant to the PCRA.  (Id.)  Initially, the Superior Court deemed all of Petitioner's claims waived due to Petitioner's failure to ensure that the certified record contained a transcript of the PCRA hearing.  (Id.)  Further, the Superior Court examined Petitioner's ineffective assistance of counsel arguments and found that, even if not waived, none of the arguments would entitle him to relief.  (Doc. No. 23 at 2 n.1; Feb. 19, 2009 Super. Ct. Op. at 5-9.)

---

[6]  Under 28 U.S.C. § 2244(d)(1)(A), a judgment becomes final at expiration of time for seeking review.  See also Swartz v. Meyers, 204 F.3d 417, 419 (3d Cir. 2000) (judgment of sentence becomes final at conclusion of direct review or expiration of time for seeking such review); U.S. S. Ct. R. 13 (allowing 90 days to file a petition for writ of certiorari with United States Supreme Court).

[7]  Pursuant to 28 U.S.C. § 2244(d)(1), "[a] 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court."  Pursuant to 28 U.S.C. § 2244(d)(2), "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."

On May 26, 2009, Petitioner filed for allowance of appeal to the Pennsylvania Supreme Court. While Petitioner waited for a decision by the Pennsylvania Supreme Court, new information came to light. On September 1, 2009, the Lehigh County Court of Common Pleas entered an order stating that the PCRA hearing transcript had not been transmitted to the Pennsylvania Superior Court because it was misplaced, and ordering the clerk to file the transcript and forward same as a supplemental record to the Superior Court. (Doc. No. 1 at 22.) On June 10, 2010, the Pennsylvania Supreme Court denied allowance of an appeal, resuming Petitioner's one-year statute of limitation period with ninety-six days remaining. (Id.) On September 14, 2010, Petitioner's deadline to file a federal habeas petition expired.

On August 15, 2011, eleven months after the deadline to file a federal habeas corpus petition expired, Petitioner filed the instant Petition for Writ of Habeas Corpus in the United States District Court for the Eastern District of Pennsylvania. (Doc. No. 1.) On August 16, 2011, Petitioner filed a motion to reopen and reconsider his PCRA petition in the Lehigh County Court of Common Pleas due to the issue with the missing transcript. (Doc. No. 19 at 5.) On April 25, 2012, the Court of Common Pleas granted the motion in part, permitting Petitioner to file an appeal to the Pennsylvania Superior Court *nunc pro tunc* on his first PCRA petition, which denied the appeal due to the missing transcript.[8] (Id.) While Petitioner's state court proceedings continued, the United States District Court stayed and held in abeyance Petitioner's habeas corpus Petition. (Doc. No. 12.)

On May 9, 2012, Petitioner filed the *nunc pro tunc* appeal to the Superior Court. On February 26, 2013, the Pennsylvania Superior Court denied Petitioner's motion to reopen and

---

[8]  The court also denied the motion in part to the extent the PCRA petition sought any additional relief.

reconsider due to lack of jurisdiction.  (Doc. No. 19 at 5.)  The court found that the PCRA petition was in fact a second petition, and therefore untimely under 42 Pa. Cons. Stat. Ann. §§ 9545(b)(1)-(2) because it was not filed within one year of the final conviction or sixty days after discovering the transcript was misplaced.[9]  (Id.)

On October 23, 2013, this Court granted Petitioner's Motion to Reinstate his federal habeas corpus Petition and return the case to active status.  (Doc. No. 16.)  On December 12, 2013, the Commonwealth filed a Response in Opposition to the Petition arguing that the filing was untimely.  (Doc. No. 19.)  On January 17, 2014, Petitioner filed a Response to the Commonwealth's Opposition.  (Doc. No. 22.)  On June 13, 2014, Magistrate Judge Rice issued the first Report and Recommendation, finding the Petition for Writ of Habeas Corpus untimely.  (Doc. No. 23.)   On June 25, 2014, Petitioner filed Objections to the Report and Recommendation.  (Doc. No. 24.)  Petitioner's Objections to the Report and Recommendation are now before this Court for review.

Additionally, as noted, on September 2, 2014, Petitioner filed a Motion for Remand to the Magistrate Judge for consideration of new affidavits submitted by Petitioner's parents.  (Doc. No. 25.)  The affidavits purport to raise a claim of attorney abandonment or malfeasance by Petitioner's prior attorney in failing to file a timely habeas petition.  (Id.)  Respondents filed a Response on October 17, 2014, arguing that Petitioner's failure to raise this argument earlier in these proceedings is further evidence of his lack of reasonable diligence.  (Doc. No. 29.)   On October 20, 2014, Petitioner filed a Reply.  (Doc. No. 30.)

---

[9]  42 Pa. Cons. Stat. Ann. § 9545(b)(1) provides:  "Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final."  42 Pa. Cons. Stat. Ann. § 9545(b)(2) provides:  "Any petition invoking an exception provided in paragraph (1) shall be filed within 60 days of the date the claim could have been presented."

At some point in October 2014, Petitioner filed another PCRA petition in state court relying on a new affidavit submitted by the attorney who represented Petitioner at his suppression hearing.[10]   (Doc. No. 31 at 1.)  On October 24, 2014, Petitioner filed a Motion to Stay and Abey his habeas Petition while he litigates the new PCRA petition in state court.  (Doc. No. 31.)  Respondents opposed this Motion (Doc. No. 32), and Petitioner filed a Reply (Doc. No. 33).  As noted, on January 15, 2015, Magistrate Judge Rice issued the second Report and Recommendation, recommending that both Motions be denied with prejudice.  (Doc. No. 35.) Petitioner filed Objections to that Report and Recommendation on January 23, 2015.  (Doc. No. 36.)  These Objections are also before the Court for consideration.

## III.   STANDARD OF REVIEW

Under 28 U.S.C. § 636(b)(1)(B) and the local rules of this Court, a district judge is permitted to designate a magistrate judge to make proposed findings and recommendations on petitions for post-conviction relief.  Any party may file objections in response to the magistrate judge's report and recommendation.  Id. at § 636(b)(1)(C).  Whether or not an objection is made, a district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The [district] judge may also receive further evidence or recommit the matter to the magistrate judge with further instructions."  Id.  "[I]t must be assumed that the normal practice of the district judge is to give some reasoned consideration to the magistrate's report before adopting it as the decision of the court."  Henderson v. Carlson, 812 F.2d 874, 878 (3d Cir. 1987); see also 28 U.S.C. § 636(b).

---

[10] The affidavit of Petitioner's former attorney, James L. Heidecker, Jr., Esquire, states that Mr. Heidecker visited Petitioner in the hospital at approximately 7:45 a.m. on November 14, 2002, at which time Petitioner was "groggy."  (Doc. No. 31-1.)  Petitioner's confession to police occurred over eight hours earlier from approximately 9:30 p.m. to 11:05 p.m. on November 13, 2002.  (Doc. No. 32 at 7.)  Petitioner argues this affidavit supports his claim that his confession was not voluntary.

In the Eastern District of Pennsylvania, Local Rule 72.1.IV(b) governs a petitioner's objections to a magistrate judge's report and recommendation. Under that rule, a petitioner must "specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections[.]" Savior v. Superintendent of Huntingdon SCI, No. 11–5639, 2012 WL 4206566, at *1 (E.D. Pa. Sept. 20, 2012). Upon review, "[a district judge] shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). De novo review is non-deferential and generally permits the district court to conduct an "independent review" of the entire matter. Salve Regina Coll. v. Russell, 499 U.S. 225, 238 (1991). "Although [the] review is de novo, [a district judge] [is] permitted, by statute, to rely upon the magistrate judge's proposed findings and recommendations to the extent [the judge], in the exercise of sound discretion, deem[s] proper." Owens v. Beard, 829 F. Supp. 736, 738 (M.D. Pa. 1993) (citing United States v. Raddatz, 447 U.S. 667, 676 (1980)).

## IV.    ANALYSIS

### A.    Petitioner's Objections to the June 13, 2014 Report and Recommendation

Petitioner makes three Objections to the June 13, 2014 Report and Recommendation finding his Petition untimely. (Doc. No. 24.) Petitioner argues his untimely Petition should be excused due to an alternative start date under statutory tolling, equitable tolling, and actual innocence.[11] In his actual innocence argument, Petitioner specifically objects to Magistrate Judge Rice finding that his evidence was not new and that Judge Rice did not consider the physical evidence that supposedly contradicts Petitioner's confession. (Id.) The Court will

---

[11] Petitioner also "objects" to the factual and procedural history. However, he simply lists a handful of dates that have no significance on the untimeliness of his filing. His laundry list of dates is not an objection to the Report and Recommendation, and therefore gives no basis to excuse his untimely filing.

address each Objection in turn.  For the following reasons, the Court will adopt and approve Magistrate Judge Rice's first Report and Recommendation, finding the Petition untimely.

**1. Petitioner's Objection that an Alternative Start Date Should Be Used Based on Statutory Tolling[12]**

Petitioner objects to Magistrate Judge Rice's conclusion that his Petition was untimely. (Doc. No. 24 at 6-8.)  He argues that he is entitled to statutory tolling with an alternative start date under 28 U.S.C. § 2244(d)(1)(B), which provides as follows: "the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action."  Petitioner contends that the impediment was the Pennsylvania Superior Court's decision deeming his claims waived due to a missing transcript.

Petitioner claims that because his Petition was filed within one year of the decision in Commonwealth v. Almodovar, 20 A.3d 466 (Pa. 2011), his Petition is timely.[13]  In Almodovar, the Pennsylvania Supreme Court held that the Superior Court should have allowed the defendant to supplement the appellate record with a hearing transcript that had not been transmitted due to the court reporter's typographical error.  The lower court had held that the defendant waived the issues on appeal because he failed to forward the transcript to the Superior Court.  On review, the Supreme Court of Pennsylvania found:

> This Court has held that where the appellant has caused the delay in transmitting a record to the Superior Court, which leads to an inability to conduct an effective

---

[12] Magistrate Judge Rice uses the term "alternative start date" whereas Petitioner uses the term "statutory tolling."  Both are in reference to 28 U.S.C. §§ 2244(d)(1)(A)-(D), which provides alternative start dates through statutory tolling.  See Darden v. Sobina, 477 F. App'x 912, 916 (3d Cir. 2012).

[13] Petitioner's argument is not clear, but the Court construes it to be that the decision in Almodovar removed Petitioner's impediment to filing a federal habeas petition, and that the alternative start date should be the date the Almodovar decision was filed.

appellate review, the appellant waives any issues on appeal; and in a criminal defense appeal that may lead to affirmance of the judgment of sentence.  But, where "the failure to transmit the record was caused by an 'extraordinary breakdown in the judicial process,'" an appellant should not be denied merits review in the Superior Court.

Almodovar, 20 A.3d at 370 (citing Commonwealth v. Williams, 715 A.2d 1101, 1106 (1998)) (internal citations omitted).  Because the defendant had requested the transcript, but the wrong transcript was transmitted due to the court reporter using an incorrect case number, the Supreme Court held that the absence of the correct transcript was due to an "extraordinary breakdown in the judicial process," and the Superior Court should have granted defendant's motion to supplement the record.  Id. at 370-71.

Here, Petitioner argues that the impediment to him filing a federal habeas petition is either: (1) the trial court's failure to transmit the PCRA hearing transcript to the Superior Court, or (2) "the Superior Court's allegation that it did not have the transcript of the PCRA hearing when the record shows otherwise."  (Doc. No. 24 at 6.)  Petitioner claims the Almodovar decision eliminated the procedural default.  (Id.)  Petitioner's argument for an alternative start date fails for several reasons.

Initially, Petitioner does not offer any explanation as to how the missing transcript constituted an unconstitutional state court impediment to filing a federal habeas petition.  Furthermore, Petitioner does not explain how Almodovar removed the impediment.  Even if Almodovar were to be considered, the Pennsylvania Superior Court considered and distinguished Petitioner's claim.  (Doc. No. 19 at 42-43.)  The court denied Petitioner's claim because, unlike the petitioner in Almodovar, who moved to supplement the record immediately after finding out a transcript was missing, Petitioner waited almost two years to move to reopen his PCRA petition.  (Doc. No. 19 at 9.)  Under 42 Pa. Cons. Stat. Ann. § 9545(b)(2), Petitioner had sixty

days after being notified of the missing transcript to file a motion to reopen his PCRA petition. The PCRA Court of Common Pleas noted that the transcript was never transmitted to the Superior Court on September 1, 2009; however, Petitioner did not move to reopen his PCRA petition until August 16, 2011, and did not file his federal habeas petition in this Court until August 15, 2011, the day before.  Thus, the missing transcript did not impede his ability to file a federal habeas petition.

Additionally, to the extent that Petitioner argues that <u>Almodovar</u> sets forth new law entitling him to relief from his untimely filing, this argument is incorrect.  <u>Almodovar</u> cited to <u>Commonwealth v. Williams</u>, decided in 1998, for the holding Petitioner relies on, that an appellant "should not be denied appellate review if the failure to transmit the record was caused by an 'extraordinary breakdown in the judicial process.'"  <u>Almodovar</u>, 20 A.3d at 467 (citing <u>Commonwealth v. Williams</u>, 715 A.2d 1101, 1106 (Pa. 1998)); <u>see also</u>, <u>Commonwealth v. Preston</u>, 904 A.2d 1, 8 (Pa. Super. Ct. 2006); <u>Commonwealth v. Bongiorno</u>, 905 A.2d 998, 1001 (Pa. Super. Ct. 2006).  Therefore, Petitioner's argument that the decision in <u>Almodovar</u> somehow removes the procedural default is misplaced.   Magistrate Judge Rice correctly noted that <u>Almodovar</u> addresses an issue of state procedure, not federal habeas law.

Ultimately, Magistrate Judge Rice correctly concluded that <u>Almodovar</u> does not entitle Petitioner to statutory tolling.  On September 11, 2006, Petitioner's conviction became final. (Doc. No. 1.)  Petitioner's one-year statute of limitations began to run on September 11, 2006. On June 7, 2007, Petitioner filed a PCRA petition which tolled the statute of limitations.  (<u>Id.</u>) On September 1, 2009, Petitioner became aware that the transcript was not transmitted to the Superior Court because of an apparent administrative error.  (<u>Id.</u>)  On June 10, 2010, when the Pennsylvania Supreme Court denied review, Petitioner's statute of limitations resumed with

ninety-six days remaining.  (Id.)  On September 14, 2010, the deadline for filing a federal habeas petition expired.  (Id.)  Petitioner did not file the federal habeas Petition before this Court until August 15, 2011, eleven months late.[14]

With no statute providing an alternative start date under these circumstances, this Court cannot find that Petitioner was impeded from filing a federal habeas petition.  Consequently, Petitioner's reliance on statutory tolling fails and does not excuse the untimely filing.[15]

### 2. Petitioner's Objection that Equitable Tolling Should Apply

Again, Petitioner objects to Magistrate Judge Rice's conclusion that his Petition was untimely.  (Doc. No. 24 at 7-10.)[16]  He argues that equitable tolling should excuse his late filing. (Id.)  Because the decision of the Pennsylvania Superior Court deeming his claims waived due to the missing transcript "derailed the Petitioner's timely filed appeal, [sic] and untracked the entire post-conviction process including federal habeas," Petitioner believes equitable tolling comes into play.  (Doc. No. 24 at 10; Doc. No. 1 at 34.)  Petitioner again relies on the procedural history regarding the misplaced transcript and cites to Almodovar.  (Doc. No. 24 at 7-10.)  Magistrate

---

[14] As noted, Petitioner incorrectly argues that the one-year limitations period would commence on the date Almodovar was decided, which was April 18, 2011.  20 A.3d 466.  Even if the statute of limitations resumed on this date (which it did not), Petitioner's habeas petition would still be untimely because Petitioner fails to address the 269 days which had already passed in his one-year limitations period before he filed his first PCRA petition.  Ninety-six days after April 18, 2011 is July 23, 2011.  The federal habeas petition was filed on August 15, 2011.

[15] Petitioner's additional argument that the time periods associated with his second PCRA petition filed on August 16, 2011 should count towards tolling is without merit.  Even a timely filed PCRA petition cannot toll an expired federal habeas statute of limitations.  Morris v. Mazurkiewicz, 2011 WL 2708498, at *3 (E.D. Pa. June 8, 2011) (citing Fried v. Horn, 2003 WL 23142179, at *3 (E.D. Pa. Aug. 11, 2003) for the proposition that "[t]he section 2244 tolling provisions can only 'pause a clock that has not yet fully run,' they cannot 'restart the clock at zero.'")

[16] Petitioner's "Objection" regarding equitable tolling is almost word for word the same as the "Equitable Tolling" section raised in Petitioner's initial Petition.  (Doc. No. 1 at 31-34.)

Judge Rice considered and rejected Petitioner's argument that equitable tolling should apply here.  (Doc. No. 23.)

A petitioner is entitled to equitable tolling of the one-year limitations period only if he demonstrates that: (1) "he has been pursuing his rights diligently," and (2) "'some extraordinary circumstances stood in his way' and prevented timely filing."  Holland v. Florida, 560 U.S. 631, 649 (2010) (quoting Pace, 544 U.S. at 418).  These circumstances may be present where: (1) the petitioner has been actively misled; (2) the petitioner "has 'in some extraordinary way' been prevented from asserting his rights," such as by extreme neglect and unresponsiveness by his counsel; or (3) the petitioner "timely asserted his rights mistakenly in the wrong forum."  Jones v. Morton, 195 F.3d 153, 159 (3d Cir. 1999) (quoting United States v. Midgley, 142 F.3d 174, 179 (3d Cir. 1998)).  Under Holland, for purposes of applying equitable tolling, the required diligence to pursue one's rights is reasonable diligence and not maximum possible diligence. 560 U.S. at 653.  However, courts must be "sparing" in their use of the equitable tolling doctrine, which is meant to provide equitable relief where "rigid application" of the one-year federal limitation period would be unfair.  Ross v. Varano, 712 F.3d 784, 799 (3d Cir. 2013).

### i.  Petitioner did not pursue his rights diligently

As Magistrate Judge Rice correctly concluded, Petitioner has failed to show that he had been pursuing his rights diligently.  On February 19, 2009, the Pennsylvania Superior Court affirmed the order denying Petitioner's first PCRA petition, deeming Petitioner's claims waived because of the missing transcript.  (Doc. No. 1.)  Petitioner filed for an allowance of appeal, arguing the Pennsylvania Superior Court did not consider the entire record.[17]  On September 1, 2009, the Court of Common Pleas entered an order noting that the transcript was never sent to

---

[17] See State Crim. Docket Number CP-39-CR-0004381-2002.

the Superior Court.  (Id.)  On June 10, 2010, the Pennsylvania Supreme Court denied allowance of an appeal.  (Id.)  Over fourteen months later, on August 16, 2011, Petitioner filed to reopen his PCRA petition based on the missing transcript.  (Id.)  As noted previously, Petitioner filed his federal habeas Petition on August 15, 2011.  (Id.)

Petitioner's Petition and his Objections to the June 13, 2014 Report and Recommendation never offered any reason for the untimely delay in filing his habeas Petition.  Petitioner simply states that the "administrative breakdown" regarding the missing transcript caused the delay. (Doc. No. 24 at 8-9.)  As noted earlier, Petitioner missed the federal habeas deadline by eleven months.  Since courts should be sparing in their application of equitable tolling, and Petitioner gives no reason why rigid application would be unfair here, this Court cannot conclude that Petitioner pursued his rights with reasonable diligence.

### ii. Petitioner fails to show an extraordinary circumstance stood in his way

In addition, Magistrate Judge Rice correctly concluded that Petitioner has failed to show some extraordinary circumstance stood in his way and prevented a timely filing.  Petitioner argues that the administrative breakdown in the Court of Common Pleas and Superior Court led to his untimely federal habeas filing.  (Doc. No. 24. at 8.)  However, Petitioner does not explain how, and this Court is not persuaded that, the missing transcript led to the delay in his federal habeas filing.  The issues with the missing transcript in state court did not prevent a timely filing in this Court, and it did not cause him to file eleven months after the deadline.  Petitioner waited almost two years after discovering the transcript was not submitted – and over one year after the Supreme Court denied review – to seek relief.  With no explanation for this delay, the Objection based on equitable tolling does not excuse the untimely filing.

14

### 3.   Petitioner's Objection that Actual Innocence Excuses his Untimely Filing

Petitioner objects to Magistrate Judge Rice's conclusion that his actual innocence claim does not excuse his untimely habeas Petition.  (Doc. No. 24.)  Petitioner's actual innocence claim is based upon two assertions.  First, he argues that there is new and conflicting evidence that supports his innocence.  Second, he argues that ineffective assistance of counsel supports his claim of actual innocence.

### i.   Petitioner's objection that the actual innocence exception applies because of new and conflicting evidence

Petitioner objects to Magistrate Judge Rice's conclusion that Petitioner has not presented new evidence and argues that the judge did not consider the conflicting evidence that Petitioner believes shows his innocence.  (Id. at 10, 13.)  Petitioner states that the "new, reliable evidence is the physical evidence which conflicts with the Petitioner's bedside statement."  (Id. at 10.)  The physical evidence Petitioner refers to is the evidence presented at trial, which he believes conflicts with his testimony of the events.   Specifically, Petitioner claims that his confession conflicts with the forensic evidence, "which indicated that the decedent was stabbed with something and bleeding heavily before the Petitioner tracked her blood through the house and down to the kitchen where he stated he retrieved two knives for self-defense."  (Id. at 12-13.)  In other words, Petitioner simply argues the "statement itself makes no sense in light of the physical evidence" presented at trial.  (Id. at 13.)  Magistrate Judge Rice properly dismissed this argument because the evidence is not new because it was presented at trial.  (Doc. No. 23.)

An actual innocence defense arises when there is a fundamental miscarriage of justice. An untimely petition for writ of habeas corpus can be considered where a conviction resulted in a fundamental miscarriage of justice.  See Mcquiggin v. Perkins, 133 S. Ct. 1924, 1928 (2013).  To establish the fundamental miscarriage of justice exception, a petitioner must show actual

innocence.  Thomas v. Sec. Pa. Dept. of Corrs., 495 F. App'x 200, 207 (3d Cir. 2012); see also

Schlup v. Delo, 513 U.S. 298, 327 (1995) (stating that a fundamental miscarriage of justice

exception requires a petitioner to show a "constitutional violation [that] has probably resulted in

the conviction of one who is actually innocent").  The actual innocence exception will only apply

in extraordinary cases.  See Werts v. Vaughn, 228 F.3d 178, 193 (3d Cir. 2000).  In other words, a

federal court can excuse a procedural default, such as an untimely filing, to review a claim in

order to prevent a fundamental miscarriage of justice.  Edwards v. Carpenter, 529 U.S. 446, 451

(2000).

For a petitioner to satisfy the actual innocence standard, he must show that in light of new

evidence, it is "more likely than not that no reasonable juror" would have found him guilty

beyond a reasonable doubt.[18]  Schlup, 513 U.S. at 327; see also Cristen v. Brennan, 281 F.3d 404,

420 (3d Cir. 2002).  "Actual innocence means 'factual innocence, not mere legal insufficiency.'"

Sweger v. Chesney, 294 F.3d 506, 523 (3d Cir. 2002) (quoting Bousley v. United States, 523 U.S.

614, 623 (1998)).  A petitioner is required "to support his allegations of constitutional error with

*new reliable evidence*–whether it be exculpatory scientific evidence, trustworthy eyewitness

accounts, or critical physical evidence–that was not presented at trial."  Id. (quoting Schlup, 513

U.S. at 324).  "New reliable evidence is almost always required in order to establish actual

innocence."  Id.  When conducting a habeas analysis, a federal court must presume the factual

findings of both state trial and appellate courts correct, and in order to overcome that

presumption, there must be a basis of clear and convincing evidence to the contrary.  28

U.S.C.  § 2254(e)(1); Stevens v. Del. Corr. Ctr., 295 F.3d 361, 368 (3d Cir. 2002).

---

[18] In McQuiggin v. Perkins, 133 S. Ct. 1924, 1927 (2013), the court held that, "[u]nder Schlup's
demanding standard, the gateway should open only when a petition presents 'evidence of
innocence so strong that a court cannot have confidence in the outcome of the trial unless the
court is also satisfied that the trial was free of nonharmless constitutional error.'"

The alleged conflict between the trial evidence and the physical evidence relied on by Petitioner here is not new evidence.  Because the state trial court, after deciding the motion to suppress the bedside confession,[19] admitted the incriminating statement into evidence, and a jury did not find that this evidence conflicted with the physical evidence presented, the evidence is not new.  Petitioner offers no rational explanation for how the evidence was conflicting or how it is new, but simply states his confession "conflicted with the forensic evidence, which indicated that the deceased was stabbed with something and bleeding heavily before the Petitioner tracked [his wife's] blood through the house and down to the kitchen where he stated he retrieved two knives for self-defense." (Doc. No. 24 at 12-13.)  Petitioner has not offered "new evidence" such as exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence.  Petitioner merely argues the evidence already presented "makes no sense." (Id. at 13.)

With no new evidence to the contrary, this Court cannot find actual innocence on the mere claim that the physical evidence conflicted with his confession.  Since the jury heard the confession and the "conflicting physical evidence" and convicted Petitioner nonetheless, the standard that it is "more likely than not that no reasonable juror" would convict in light of the new evidence is not met.  It is further not likely that any juror would refrain from convicting Petitioner after hearing this "evidence."  Therefore, Petitioner cannot satisfy the actual innocence standard to excuse a procedural default.  Petitioner's Objection claiming actual innocence based on new and conflicting evidence does not provide a basis to excuse his untimely filing.

---

[19] See Doc. No. 19 at 98-99.

### ii. Petitioner's objection that the actual innocence exception applies due to ineffective assistance of counsel

Petitioner also has asserted ineffective assistance of counsel claims, all of which were raised in state court during the PCRA hearing in the Court of Common Pleas.  (Doc. No. 19.)[20] Petitioner's five ineffective assistance of counsel Objections are: (1) ineffective assistance of post-conviction counsel; (2) ineffective assistance of trial counsel based on conflict of interest; (3) ineffective assistance for failure to cross-examine a witness; (4) ineffective assistance for failure to call an expert witness; and (5) ineffective assistance for failure to request a mistrial based on prosecutorial misconduct.  (Doc. No. 24.)

Although it is not clear, the Court discerns that Petitioner relies on these five ineffective assistance claims individually and collectively to indicate actual innocence.  (Doc. No. 24; Doc. No. 22 at 13.)  Petitioner believes that his ineffective assistance of counsel claims amount to reliable evidence that cumulatively show he was deprived of trial-worthy evidence.  (Doc. No. 22 at 13.)  However, as stated above, Petitioner has not presented any new evidence.  Further, Petitioner's ineffective assistance of counsel claims involve the merits of the Petition, which this Court finds to be untimely.  Magistrate Judge Rice considered and rejected Petitioner's argument because the ineffective assistance of counsel arguments do not provide evidence of actual innocence.

As stated above, Petitioner is required "to support his allegations of constitutional error with *new reliable evidence*–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial."  <u>Sweger v. Chesney</u>, 294

---

[20] The PCRA hearing testimony and Judge Reibman's opinion issued after the PCRA hearing in the Court of Common Pleas are attached to the Commonwealth's Response in Opposition to the Petition.  (Doc. No. 19 at 45-75; 77-96.)

F.3d 506, 523 (3d Cir. 2002) (quoting <u>Schlup</u>, 513 U.S. at 324).  "Actual innocence means 'factual innocence, not mere legal insufficiency.'"  <u>Id.</u> (quoting <u>Bousley v. United States</u>, 523 U.S. 614, 623 (1998)).

Here, Petitioner does not offer any reliable new evidence along with his ineffective assistance claims.  Because Petitioner's Objections, based on ineffective assistance, amount to legal insufficiency and not factual innocence based on reliable new evidence, they do not meet the standard required for an actual innocence exception to an untimely petition.

With regard to Petitioner's argument that trial counsel was ineffective for failing to call an expert witness, which is the only claim of ineffective assistance that warrants discussion, he argues that trial counsel's decision not to call Dr. Paul Orr as an expert witness was objectively unreasonable.  (Doc. No. 24 at 17-18.)  Petitioner argues that Dr. Orr testified at the suppression hearing that Petitioner did not understand the <u>Miranda</u> warnings as a result of the side effects of the medications he was on, and should have similarly been called to testify at trial.  (<u>Id.</u>) Petitioner raised this claim in his PCRA petition as well.  Petitioner's trial counsel, Eric Dowdle, Esquire, testified at the PCRA evidentiary hearing, and explained that he decided not to call Dr. Orr as an expert witness at trial because he believed it would have been harmful to Petitioner's case.  (Doc. No. 19 at 17; May 15, 2008 Ct. of Common Pleas Op. at 15-16; Feb. 19, 2009 Super. Ct. Op. at 7.)  At the suppression hearing, Dr. Orr testified that Petitioner's condition at the time of the bedside confession was similar to a person with jet lag.  (<u>Id.</u>)  Mr. Dowdle testified at the PCRA hearing that he believed such testimony at trial would lead a jury to believe Petitioner was essentially tired, and without such testimony he could argue more forcibly to the jury that Petitioner was incoherent at the time of the confession.  (<u>Id.</u>)  The PCRA court and the Superior Court of Pennsylvania considered Petitioner's argument of ineffective assistance of counsel and

concluded that Petitioner failed to prove that trial counsel lacked a reasonable basis for his decision not to call Dr. Orr.  (Id.)  This Court agrees that Petitioner's claim here does not show trial counsel's performance fell below an objective standard of reasonableness, and does not show that the decision prejudiced Petitioner's defense.  See Strickland v. Washington, 466 U.S. 668 (1984).  Most importantly, Dr. Orr's testimony does not constitute new evidence that would make it more likely than not that no reasonable juror would have found him guilty.

Because Petitioner has not offered "new evidence" showing actual innocence to support his ineffective assistance claims, they are unavailing.  For this reason, Petitioner's actual innocence claim provides no basis to excuse his untimely filing of the habeas Petition.

For the foregoing reasons, the Court agrees with the Report and Recommendation's finding that the Petition should be denied as untimely.

**B.**      **Petitioner's Objections to the January 15, 2015 Report and Recommendation**

Subsequent to the filing of his Objections to the June 13, 2014 Report and Recommendation, Petitioner filed two Motions in this case.  First, on September 2, 2014, Petitioner filed a Motion for Remand to the Magistrate Judge for consideration of newly filed affidavits by Petitioner's parents.  (Doc. No. 25.)  The affidavits of Petitioner's parents, dated August 21, 2014, state that one of Petitioner's former attorneys, Brian McMonagle, Esquire, told them that he would file a timely habeas petition on behalf of Petitioner, but failed to do so.  (Id.) Petitioner argues that his parents' affidavits may present evidence of attorney abandonment or malfeasance which would justify equitable tolling of the time to file a habeas petition.  (Id.)  The affidavits indicate that Petitioner's parents met with and had telephone conversations with Mr. McMonagle on numerous occasions, beginning in November 2006, regarding Mr. McMonagle's representation of Petitioner in state and federal appeals.  (Id.)  Petitioner's parents paid Mr.

McMonagle for his representation, and took an active role in the representation of their son.  (Id.)

Attached to these affidavits is also a letter from Petitioner to a Widener University law professor.

(Id.)  This letter is dated October 23, 2010, and expresses an awareness of the one-year time

period to file a habeas petition, and concern that his time had expired.  (Id.)  A February 17, 2011

response letter from the Widener University professor advised Petitioner that he was out of time

to file a federal habeas petition, and that he should attempt to argue extreme ineffectiveness of

counsel in connection with the late filing.  (Id.)

On January 24, 2014, Petitioner filed a Motion to Stay and Abey his habeas

Petition while he litigates another PCRA petition in state court.  (Doc. No. 31.)  In support of this

Motion, Petitioner submits an affidavit from the attorney who represented Petitioner during a

pre-trial suppression hearing, James L. Heidecker, Jr., Esquire.  (Doc. No. 31-1.)  The affidavit

by Mr. Heidecker is dated October 17, 2014, and states that Mr. Heidecker visited Petitioner in

the hospital approximately eight hours after Petitioner confessed to the murder, at which time

Petitioner was "groggy."  (Id.)  Petitioner argues that the habeas Petition should be stayed while

the state court considers this new evidence, which allegedly supports Petitioner's claim that he

was denied due process as a result of the state court's use of his allegedly involuntary

confession.[21]  (Doc. No. 31.)

On January 15, 2015, Magistrate Judge Rice issued a Report and Recommendation

recommending that both Motions be denied with prejudice.  Petitioner filed Objections to this

---

[21] Petitioner does not raise any objections to the Magistrate Judge's recommendation to deny the Motion to Stay and Abey with prejudice.  Petitioner only objects to Magistrate Judge Rice's comment that the Heidecker affidavit, even if considered, does not sufficiently rebut the state courts' factual findings to entitle Petitioner to relief, which will be addressed below.  The Court notes that the Motion to Stay and Abey was filed in October 2014 and a year has passed without any updates from the parties on the status of the PCRA proceedings.  In any case, the Court agrees with Magistrate Judge Rice's conclusion that the Motion should be denied with prejudice.

Report and Recommendation.  Petitioner raises several objections, and then repeats many of the same arguments which have been made in the Petition and in his Objections to the first Report and Recommendation dated June 13, 2014.  The Court finds that Magistrate Judge Rice's Report and Recommendation is well reasoned, and as such adopts the Report and Recommendation.

> **1.  Petitioner's Objection that the Magistrate Judge Should Have Remanded this case for an Evidentiary Hearing on the Cumulative Impact of All Facts and Circumstances**

An evidentiary hearing is not warranted in this case.  In Petitioner's Objections he first argues again that he is entitled to statutory and/or equitable tolling based on the Court of Common Pleas' failure to transmit the PCRA hearing transcript to the Superior Court.  (Doc. No. 36 at 2-3.)  These arguments have been addressed above.  Second, Petitioner argues that it is never too late to invoke attorney abandonment as a basis for equitable tolling.  (Id. at 2.) Petitioner asserts that the District Court should hold a hearing to determine whether the alleged attorney malfeasance of Brian McMonagle, Esquire constitutes attorney abandonment justifying equitable tolling.  (Id. at 3.)  Petitioner believes the facts resemble something "closer to gross negligence or client abandonment than garden variety negligence."  (Id. at 3.)  Petitioner argues that the facts alleged warrant a nuanced appraisal of the circumstances.  (Id.)  Finally, Petitioner seems to suggest that the Motion should be granted because Respondents did not present a statement from Mr. McMonagle contesting the parents' affidavits.  (Id.)

Magistrate Judge Rice considered and denied Petitioner's arguments in support of the Motion for Remand.  (Doc. No. 35 at 3.)  Magistrate Judge Rice correctly concluded that Petitioner has failed to act diligently in pursuing his rights.  Petitioner failed to raise an attorney abandonment claim at any point from the filing of his Petition on August 15, 2011 through Objections to the first Report and Recommendation on June 25, 2014, and only raised this new

claim when he filed the Motion for Remand on September 2, 2014.  The affidavits submitted by Petitioner clearly indicate that Petitioner was aware of his former attorney's failure to file a timely habeas petitioner at least as early as October 2010, and certainly by the time he filed the instant Petition.

In fact, Petitioner's October 23, 2010 letter to a Widener University law professor expresses his concern that his time to file a habeas petition had passed.  (Doc. No. 25-1 at 7.) Additionally, the professor's response dated February 17, 2011 states that his time to file has expired and suggests that he raise an attorney abandonment claim.  (Id. at 8.) Furthermore, the affidavits of Petitioner's parents state that beginning in October 2009, Petitioner and his parents could not get in touch with Mr. McMonagle.  (Id. at 3; Doc. No. 25-2 at 2.)

Three years from the date of filing the Petition passed during which Petitioner did not raise this issue.  Instead, Petitioner has, and continues to assert that the reason for the untimely filing was the administrative issue with the hearing transcript.  A petitioner is entitled to equitable tolling only if he shows: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way" and prevented timely filing.  Holland v. Florida, 560 U.S. 631, 649 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)).

This Court cannot conclude that Petitioner has acted diligently in pursuing his rights. Therefore, a hearing to determine whether Mr. McMonagle's actions constituted attorney abandonment is not warranted under the circumstances and at this stage in the proceedings.

### 2. Petitioner's Objection to the Report and Recommendation's Finding that Petitioner and His Parents Were Aware of the Attorney Malfeasance

Regarding the objection to the denial of his Motion for Remand, Petitioner specifically objects to Magistrate Judge Rice's finding that Petitioner is "somehow vicariously responsible for the tardiness of the witnesses."  (Doc. No. 36 at 4.)  Petitioner argues that he is incarcerated,

is "not a proxy for the parents," and "has no control over the date the witnesses are willing to come forward and provide statements." (Id.)

Magistrate Judge Rice correctly concluded that Petitioner and his parents knew about the former attorney's alleged malfeasance before he filed his habeas Petition.  Magistrate Judge Rice further correctly reasoned that Petitioner's failure to raise the issue earlier "cannot be attributed to his incarceration or lack of control over the affiants, i.e., his parents." (Doc. No. 35 at 3.)  The affidavits submitted by Petitioner with his Motion for Remand strongly suggest that Petitioner's parents have been actively involved in his post-conviction legal representation.[22]  The Court is not persuaded that Petitioner's parents would not have submitted affidavits earlier if asked to do so.

Petitioner and his parents knew of the alleged attorney malfeasance and abandonment when the habeas petition was filed, but did not claim that it was the reason for the delay. Petitioner never claimed the filing delay was due to his former attorney's malfeasance or abandonment, or that such malfeasance warranted equitable tolling.  Because Petitioner failed to assert that the delay in filing was due to his former attorney's malfeasance or abandonment, this Court cannot conclude that Petitioner has exercised reasonable diligence in pursuing his rights.

### 3.  Petitioner's Objection that the Affidavit of Mr. Heidecker is Relevant to Petitioner's Claim of Ineffective Assistance of Counsel

Petitioner objects to Magistrate Judge Rice's conclusion that the affidavit of Mr. Heidecker does not sufficiently rebut the state courts' factual findings.  (Doc. No. 36 at 4-6.) Petitioner argues that Mr. Heidecker's affidavit supports the claim that his statement to police

---

[22]  For example, the affidavits of Petitioner's parents indicate that his parents searched for attorneys for Petitioner in 2006, and again in 2011; met with and communicated with the attorneys and discussed Petitioner's representation and case; paid Petitioner's attorney fees; and attempted to call Mr. McMonagle on multiple occasions.  (Doc. Nos. 25-1; 25-2.)

was involuntary and its admission violates due process.  (Id. at 6.)  Petitioner claims the statement was taken while he was under the influence of morphine, fentanyl, Phenergan, and magnesium sulfate and had a breathing tube inserted in his chest cavity.  (Id. at 5-6.)  Petitioner believes that because he was under the influence at the time, the statement was not given voluntarily.  (Id. at 6.)  He argues that Mr. Heidecker's affidavit is relevant because it supports a finding that he was under the influence when giving the statement.  (Id.)  Magistrate Judge Rice considered the relevance of Mr. Heidecker's affidavit and concluded that it failed to show Petitioner was entitled to any relief.  (Doc. No. 35 at 6.)

"[A] determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by *clear and convincing evidence*."  28 U.S.C. § 2254(e)(1) (emphasis added).

At trial, police officers and medical professionals who observed Petitioner at or immediately around the time he gave the statement testified that he was "awake, alert, lucid, and comfortable."  (Doc. No. 35 at 6.)  Mr. Heidecker's affidavit states that he found Petitioner groggy and impaired during his visit; however, Mr. Heidecker's affidavit also states that his visit occurred more than eight hours after Petitioner made his statement to police.  (Id.; Doc. No. 31-1.)  Given the lapse in time, Mr. Heidecker's observations cannot override the observations of witnesses present at the time the statement was made.  Therefore, Mr. Heidecker's subsequent observations are not clear and convincing evidence that the state court's findings were erroneous.  Petitioner's objection that Mr. Heidecker's affidavit is relevant to his due process violation claim is without merit.

**4. Petitioner's Objection that the Totality of the Circumstances Support Statutory Tolling and Equitable Tolling**

Finally, Petitioner reiterates his arguments which were made in his Petition. The remaining content of Petitioner's objections titled "Objections to the Report and Recommendation dated January 15, 2015" (Doc. No. 36) do not in fact address any findings or recommendations from the January 15, 2015 Report and Recommendation addressing the Motions. Instead, Petitioner reargues that he is entitled to statutory tolling, equitable tolling, and the gateway claim of actual innocence exception to excuse his untimely filed Petition. Petitioner specifically notes objections to the first Report and Recommendation, which are the same objections raised and addressed earlier in this Opinion.

Petitioner reargues that the Court should take a flexible approach to equitable tolling. (Doc. No. 36 at 13.) Petitioner further argues that the two-part test in Holland v. Florida, 560 U.S. 631, 649 (2010), cannot be interpreted to require that a petitioner was strictly "prevented" from filing on time. (Id. at 8-9.) After giving consideration to the totality of the circumstances, the Court finds that Petitioner has not pursued his rights diligently.

Petitioner also outlines his claims for ineffective assistance of counsel, prosecutorial misconduct, and due process violations, as he set forth in his Petition. (Doc. No. 36 at 15-20.) The Court agrees with the recommendation that Petitioner's Petition is time-barred, and none of the claimed exceptions apply. Therefore, the Court need not address again Petitioner's claims, particularly those which go to the merits of the Petition, which the Court does not reach since the Petition is untimely.

## V.    CONCLUSION

For the foregoing reasons, the Court will approve and adopt the June 14, 2014 Report and Recommendation (Doc. No. 23), and deny Petitioner's Petition for Writ of Habeas Corpus (Doc.

26

No. 1.)    The Court will further approve and adopt the January 15, 2015 Report and Recommendation (Doc. No. 35), and deny both Petitioner's Motion for Remand and Petitioner's Motion to Stay and Abey (Doc. Nos. 25, 31).  A certificate of appealability will not be issued.

An appropriate Order follows.